UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| MICHAEL DOHERTY, ALAN HOLMES, | ) | | |
| and LOCAL 4053, INTERNATIONAL | ) | | |
| ASSOCIATION OF FIRE FIGHTERS, | ) | | |
| | ) | | |
| Plaintiffs, | ) | | |
| | ) | | |
| v. | ) | No.: | 3:07-cv-157 |
| | ) | | (VARLAN/SHIRLEY) |
| CITY OF MARYVILLE, and GREGORY | ) | | |
| MCCLAIN, named in his individual and | ) | | |
| official capacities, | ) | | |
| | ) | | |
| Defendants. | ) | | |

## MEMORANDUM OPINION

This civil action is before the Court on Plaintiffs' Motion for Partial Summary

Judgment as to Defendants' Liability [Doc. 40; *see also* Docs. 44; 45] and Defendants'

Motion for Summary Judgment [Doc. 41; *see also* Doc. 67].   Defendants responded in

opposition to plaintiffs' motion [Doc. 68], and plaintiffs filed a reply [Doc. 57].   Likewise,

plaintiffs responded in opposition to defendants' motion [Doc. 53], and defendants filed a

reply [Doc. 58].   The Court has carefully considered the pending motions, along with the

parties' briefs and other relevant filings.   For the reasons set forth herein, Plaintiffs' Motion

for Partial Summary Judgment as to Defendants' Liability [Doc. 40] will be denied and

Defendants' Motion for Summary Judgment [Doc. 41] will be granted in part and denied in

part.

# I.     Relevant Facts

Plaintiffs Michael D. Doherty and C. Alan Holmes are, and were at all relevant times, employed by the City of Maryville as fire fighters at the Maryville Fire Department. Plaintiff Local 4053, International Association of Fire Fighters ("the association," "MFFA," or "Local 4053"), also known as Maryville Fire Fighters Association, is a labor organization composed of Maryville Fire Department employees. Doherty is currently, and was at all times relevant to this case, President of MFFA and Holmes is currently, and was at all times relevant to this case, Treasurer of MFFA. Plaintiffs filed this suit against the City of Maryville and Gregory McClain, the City Manager, claiming violations of their rights to free speech and free association under the First and Fourteenth Amendments to the U.S. Constitution.

In late 2004 or early 2005, MFFA contracted with FireCo, LLC ("FireCo") to assist it in raising funds by conducting and selling tickets to an oldies benefit concert. Doherty and Holmes signed a services agreement ("First Services Agreement") on behalf of MFFA as the association's president and treasurer. FireCo fundraisers sold tickets to the benefit concert by calling local residents and businesses, identifying themselves as callers acting on behalf of MFFA, and explaining that the purpose of the ticket sales was to raise money for the association and its activities. FireCo fundraisers agreed to follow a script during their calls. After all expenses were paid, MFFA and FireCo split the remaining funds equally.

Shortly after the telephone sales calls began, the City of Maryville began receiving complaints from its citizens regarding the calls. Citizens complained that callers were pushy, rude, abrasive, harassing, misleading, confusing and unprofessional. Some citizens did not

like being solicited or that the tickets were not tax deductible. Another complaint was that the sales appeared to be a scam. Citizens reported that the callers used profanity and that they were scared by the calls. Numerous citizens stated that they believed it was actually the City of Maryville or the City of Maryville Fire Department placing the sales calls. Citizens also complained that callers threatened that if they did not buy tickets, fire hydrants would be turned on their homes, Dalmatian puppies would starve, or fire fighters would have to come to their homes for dinner.

These complaint calls required City of Maryville employees to use time normally devoted to City business to answer the complaint calls from the public and forward them to Doherty. Some citizens mistakenly mailed checks for payment of the concert tickets to the City, requiring City officials to take time to return them. Gary Hensley, Maryville City Manager at that time, stated that the sales calls were also causing harm to the City's reputation because of the nature of some of the calls.

On August 9, 2005, Doherty was called to a meeting about the complaint calls with Hensley, Gregory McClain (Deputy City Manager at that time), David Hodges (Maryville Fire Department Deputy Fire Chief), and Rom Everett (Maryville Fire Department Fire Inspector). Doherty was called to the meeting because "[i]t was made known to the city that Michael Doherty was the president and the one responsible for the contract with this fundraiser." [McClain Dep. 71.] Holmes was called to join the meeting when Doherty informed Hensley that Holmes had also signed the First Services Agreement with FireCo.

3

Hensley informed Doherty and Holmes that he was upset because Maryville employees received complaint calls from citizens regarding FireCo's fundraising efforts. Hensley stated that it had taken the City over two hundred years to build its reputation and he did not want rude telemarketers destroying it. Hensley informed Doherty and Holmes that if the calls did not stop, their employment would be terminated. He made sure that they understood what he was telling them and reiterated that if the complaints did not stop, he was going to fire them. Doherty asked Hensley for details on the calls, including the callers' names, so that the association could investigate the complaints but Hensley did not provide any details.

After the August 9, 2005 meeting, MFFA immediately suspended FireCo's fundraising efforts. On September 11 or 12, 2005, Doherty signed a new services agreement ("Second Services Agreement"), with FireCo on behalf of MFFA, resuming the telephone calling campaign. Holmes did not sign the Second Services Agreement. The script used for calls after September 12, 2005 was modified from the original script in an attempt to address the concerns raised by the City.

From August 5, 2005 through August 28, 2006, the City received six complaint calls regarding FireCo's fundraising efforts on behalf of MFFA. Each of these calls were documented, but no Maryville official contacted Doherty, Holmes, or MFFA regarding these calls until August 28, 2006 when McClain confronted Holmes with a tape recording of one of FireCo's calls. The recording reveals that the caller stated he was "with the Maryville Fire Fighters," and after the person who answered the phone hung up, the caller stated, "F---

4

you."[1]  Holmes told Doherty about the tape recording and Doherty, on behalf of the association, once again immediately instructed FireCo to cease all fundraising activities on its behalf.  MFFA's fundraising efforts with FireCo have not resumed and the association's budget related to its intended charitable and educations activities has been suspended since August 28, 2006.

On September 5, 2006, McClain, who had been promoted to City Manager, and other City officials met with Doherty regarding the tape recording in order to gather information to determine whether to discipline Doherty.  McClain reiterated that Doherty was subject to termination because of the continued complaint calls.  A second meeting was held on September 15, 2006, and McClain again threatened to discipline Doherty if the complaint calls continued.  McClain did not tell Doherty that he had to stop selling the concert tickets but he reiterated that the confusion and complaints from the citizens must stop.

On September 22, 2006, Doherty received a written reprimand which was permanently placed in his personnel folder.  Doherty was told that he could not appeal or otherwise challenge the reprimand and that his only recourse was to file a response to be placed in the folder with the reprimand.  Neither Doherty nor Holmes lost their jobs, received a pay cut, were forced to work a different shift, or incurred any out of pocket expenses as a result of defendants' response to the complaint calls.

---

[1]According to the defendants, the telephone call was initially answered by an answering machine, but the residence then picked up the line to speak to the caller.  The answering machine did not shut off when the resident picked up, and continued to record the call after the resident hung up.

During the period that FireCo engaged in fundraising efforts on the association's behalf, Maryville Fire Department's delivery of fire services to the community continued as it always had, Doherty and Holmes continued to perform their job duties without disruption, and there were no disruptions to Maryville Fire Department's chain of command.

## II.    Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  The burden of establishing there is no genuine issue of material fact lies upon the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986).  To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law.  *Id.*  To defeat a motion for summary judgment, the opposing party "may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e).

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, or determine the

truth of the matter. *Anderson*, 477 U.S. at 249. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

## III.    Analysis

The complaint alleges five First Amendment retaliation claims. The first and second claims allege that defendants retaliated against Doherty and Holmes, respectively, for their speech on issues of public concern, and the third claim alleges that defendants retaliated against Doherty and Holmes for their association with the public and fellow fire fighters. The fourth and fifth claims allege that defendants violated Local 4053's and Local 4053's members's rights to free speech, respectively.

Initially, the Court must determine who are the proper parties in this case. "An association such as a union has no standing to raise the issue of deprivation of freedom of speech because that constitutional guarantee is personal in nature and can only be urged by individual persons." *Milliron v. Louisville & Jefferson County Metro. Sewer Dist.*, 867 F.Supp. 559, 562-63 (W.D. Ky. 1994) (citations omitted); *see also Hague v. Comm. for Indus. Org.*, 307 U.S. 496, 514 (1939) ("Natural persons, and they alone, are entitled to the privileges and immunities which Section 1 of the Fourteenth Amendment secures for 'citizens of the United States.' Only the individual respondents may, therefore, maintain this suit."). However, an association can sue for prospective or injunctive relief on behalf of its members for violations of their First Amendment rights. *See United Food & Commercial*

7

*Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 553 (1996).  Therefore, the Court determines that the Fourth Claim in the complaint, in which plaintiffs allege a violation of Local 4053, International Association of Fire Fighters's free speech rights, must be dismissed for lack of standing.

### A.    First Amendment Retaliation Claims

All First Amendment retaliation claims are analyzed under the same framework.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 390 (6th Cir. 1999).  A person who has been subjected to an adverse action in retaliation for exercising his First Amendment rights must prove three elements to establish a claim: (1) that he engaged in a constitutionally protected activity; (2) that an adverse action was taken against him by the defendant that would likely chill a person of ordinary firmness from continuing to engage in the constitutionally protected activity; and (3) that the adverse action was motivated at least in part as a response to his exercise of a constitutionally protected right.  *Id.*

### 1.    Constitutionally Protected Activity

A plaintiff claiming retaliation for exercising a constitutional right must first show that he was engaged in constitutionally protected activity.  *Thaddeus-X*, 175 F.3d at 390.  Citizens rights to free speech and free association are protected from government regulation by the First Amendment to the United States Constitution.  However, because of the special role of the government as an employer, it is granted some leeway to regulate its employees' speech and association.  *See Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006).  Thus, when the plaintiff is a public employee who is claiming retaliation by his

8

employer, the government, the plaintiff's speech and association is protected only if (1) it touches on a matter of public concern and (2) there is no overriding state interest that would be undermined by the employee's speech or association. *See Connick v. Myers*, 461 U.S. 138, 146 (1983); *Scarbrough*, 470 F.3d at 255; *Boals v. Gray*, 775 F.3d 686, 692 (6th Cir. 1985). Whether speech is a matter of public concern is a question of law to be decided by the Court. *Chappel v. Montgomery County Fire Prot. Dist. No. 1*, 131 F.3d 564, 574 (6th Cir. 1997). If the public employee's activity "does not involve a matter of public concern, then it does not warrant First Amendment protection and the Court's inquiry is over" and the Court need not consider the other elements of the claim. *Zerman v. City of Strongsville*, No. 1:04-CV-2493, 2006 WL 2812173, at *11 (N.D. Ohio Sept. 28, 2006)

### a. Public Concern

It is undisputed that Doherty, Holmes, and the members of MFFA are and were at all times relevant publically-employed fire fighters. Thus, to determine if their speech and association are constitutionally protected activities, the Court must first determine whether plaintiffs' speech and association touched on a matter of public concern. *Connick*, 461 U.S. at 146. "Whether speech [or association] addresses a matter of public concern [must be] determined by the content, form, and context of a given statement, as revealed by the whole record." *Chappel*, 131 F.3d at 574 (citations and internal quotations omitted). Speech or association addresses a matter of public concern if it relates to a "political, social, or other concern to the community." *Rahn v. Drake Ctr., Inc.*, 31 F.3d 407, 412 (6th Cir. 1994).

Speech and association involve matters of public concern when they involve "issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government." *Rodgers v. Banks*, 344 F.3d 587, 596 (6th Cir. 2003) (quoting *Brandenburg v. Hous. Auth.*, 253 F.3d 891, 898 (6th Cir. 2001)). "Speech [or association] on matters directly affecting the health and safety of the public is obviously a matter of public concern [and] few subjects are of more public concern than the provision of basic fire and rescue services." *Chappel*, 131 F.3d at 578 (citations and internal quotations omitted) (considering speech about the lack of standard operating procedures and adequate training for fire district employees); *see also Zerman*, 2006 WL 2812173, at *12 (stating that union activities in the interest of firefighter and public safety are speech and association on a matter of public concern). This is contrasted from "internal personnel disputes or complaints about an employer's performance," which are not matters of public concern. *Id.*; *see also Milliron*, 867 F.Supp. at 563 (finding that a union president's actions were a matter of public concern because they extended beyond internal labor relations).

The undisputed facts show that, prior to September 2006, MFFA members, including Doherty and Holmes, associated and spoke out to raise money, both through the contracts with FireCo and other methods, for the purpose of assisting families in the community whose homes were destroyed by fire, assisting fire fighters in their time of need, supporting association community programs, educating fire fighters about their rights, and supporting MFFA and its associational activities. *See* Doherty Decl. ¶ 17, June 11, 2008 [Doc. 44-2];

10

Holmes Decl. ¶ 19-20, June 11, 2008 [Doc. 44-21]; *see also* Compl. ¶¶ 29; 36; 57 [Doc. 1]. The community programs the association conducted or intended to conduct with the funds it raised included teaching children about fire safety, informing the public of problems facing fire fighters and paramedics, and teaching citizens about home fire safety. Compl. ¶ 14 [Doc. 1]. Doherty explained that the association's main goal was to help the community and that they also set goals to educate the public about fire fighters. *See* Doherty Dep. 19-20, Apr. 1, 2008 [Doc. 53-3].

This speech and association involves matters of public health and safety, specifically issues related to fire and rescue services. It also keeps citizens informed about the operation of the Maryville Fire Department, a government entity. It does not involve internal disputes personal to the fire fighters engaging in the activities, but affects the community as a whole. Thus, for purposes of the instant motions, the Court concludes that plaintiffs' speech and association, through which they assist and educate the public, addressed matters of public concern.

The undisputed facts also show that defendants did not expressly tell plaintiffs that they could not engage in their community programs and other activities described above, but instead defendants required that the City stop receiving complaint calls from citizens related to the FireCo sales calls. Defendants argue that the FireCo sales calls did not address a matter of public concern, but rather, the calls were commercial speech as they were made in an attempt to sell a product, specifically tickets to concerts. Defendants argue that because commercial speech does not receive the same level of protection as non-commercial speech,

11

*see Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557 (1980), and the government may ban commercial speech that is more likely to deceive the public than to inform it, *see Friedman v. Rogers*, 440 U.S. 1, 12, 15-16 (1979); *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 455-56 (1978), the alleged restriction defendants placed on FireCo's sales calls was constitutional. During oral argument, plaintiffs seemed to argue that charitable organizations have an absolute First Amendment right to engage in fundraising, which trumps the commercial speech doctrine.

The Court notes that the commercial speech doctrine articulated in *Central Hudson*, which gives less protection to commercial speech, applies to speech made by ordinary citizens rather than public employees. In the public employment context, speech which does not address a matter of public concern does not receive even the limited protection usually afforded to commercial speech; it receives no protection at all. Because this case arises in the public employment context, the question for the Court in determining whether plaintiffs' speech and association are entitled to protection is whether the speech and association addressed matters of public concern. Despite the fact that the *Central Hudson* test does not apply in this context, defendants' argument that plaintiffs' association and speech at issue were purely commercial in nature and, therefore, did not address issues of public concern, is still applicable.

Findings that speech and association have commercial aspects and findings that speech and association address matters of public concern are not mutually exclusive. It is well recognized that the solicitation of charitable contributions often involves informative

and persuasive speech on particular views regarding economic, political, and social issues. *See Meyer v. Grant*, 486 U.S. 414, 422 (1988); *Sec'y of State v. Joseph H. Munson*, Co., 467 U.S. 947, 959-960 (1984*); Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980). However, those seeking charitable solicitations do not automatically receive protection for their commercial speech simply by including references to public issues. *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 68 (1983). "[T]he proper inquiry is not what might be incidentally conveyed by the speech, and . . . passing or fleeting references to an arguably public matter do not elevate the speech to a matter of public concern where the focus or point of the speech advances only a private interest." *Farhat v. Jopke*, 370 F.3d 580, 592-93 (6th Cir. 2004) (internal quotations and citations omitted). In the public employment context, the aspects of the speech that do not touch on matters of public concern are not protected.

During FireCo's sales calls, citizens were asked to buy tickets to an oldies concert as a fundraiser for the Maryville Fire Fighters. According to the script, callers were supposed to identify themselves as "calling for the Maryville Fire Fighters Association" and then give details on the concert and ask citizens if they would buy two tickets for $40. [Doc. 44-12.] Callers told citizens that the main idea behind the "benefit concert" was "saving lives and helping out the Fire Fighters with their programs and other member benefits." [*Id.*] If a citizen declined to buy tickets the first time a caller asked, the caller was supposed to remind the citizen that the money earned from the fundraiser was going to help the fire fighters teach children about fire safety. [*Id.*]

13

The City received complaints about FireCo's calls because some callers used profanity and told citizens that Dalmatian puppies would starve, fire hydrants would be turned on their homes, and fire fighters would have to eat dinner at their homes if they did not purchase tickets. Complaining citizens described the callers as pushy, rude, abrasive, harassing, unprofessional, misleading and confusing. Citizens also complained about the tickets not being tax deductible and the fact that they did not like being solicited.[2] Some citizens believed that they were being solicited by the City of Maryville or the Maryville Fire Department rather than the association and certain citizens incorrectly mailed checks for the tickets to the City. These complaints all related to the unprofessional, misleading, threatening, or commercial nature of the FireCo sales calls.

The sales calls, when viewed as a whole, were predominately focused on selling concert tickets. In addition to the obvious commercial nature of this activity, at least some of the callers' conduct was unprofessional, misleading, and threatening. Statements which were unprofessional, misleading, threatening, or purely commercial in nature would not inform citizens about public health and safety issues or help members of society to make informed decisions about the operation of government and, thus, do not address matters of public concern. In contrast, the statements that the main idea behind the concert was to save lives and help the fire fighters, and similar statements, arguably touched on matters of public concern. Such statements may have served to encourage citizens to make charitable

_____

[2]At oral argument, the parties disputed the level, and intensity, of such citizen complaints.

donations to further the health and safety of the public, which are matters of public concern. However, such references to matters of public concern, when viewed in context of the calls as a whole, do not elevate the sales calls in their entirety to speech on matters of public concern. Accordingly, the Court determines that, for the purposes of analyzing the parties' claims in the summary judgment context, certain aspects of FireCo's sales calls address matters of public concern, but other aspects did not.

Plaintiffs also argue that Doherty and Holmes were subjected to adverse employment actions solely because of their support of a labor organization and therefore, their association is automatically protected. There is "no doubt that an employee who is disciplined solely in retaliation for his membership in and support of a association states a valid first amendment claim." *Boals v. Gray*, 775 F.3d 686, 693 (6th Cir. 1995). It is undisputed that Doherty and Holmes signed the contract with FireCo on behalf of MFFA and not in their individual capacities. It is further undisputed that Doherty's and Holmes's employment was threatened and Doherty received a written reprimand as a result of actions pertaining to their having signed the contract. Plaintiffs suggest that this is the end of the inquiry and the Court must find that their association was protected.

The Court agrees that, for purposes of the record on summary judgment review, Doherty and Holmes were held responsible for the FireCo sales calls because they signed the contract on behalf of MFFA. However, the only logical application of automatic protection described in *Boals* is that an employee's activity is automatically protected if he is legitimately acting on behalf of an association in regard to the association's activity on a

15

matter of public concern. Application of *Boals* in any other fashion would lead to illogical results. For example, if an association attempted to raise money to be used for some charitable purpose through the sale of an illegal substance, a blanket application of *Boals* would mean the association members were shielded from any responsibility regarding the sale of the illegal substance because they were acting on behalf of the association rather than in their individual capacities. Such a result is obviously not intended by *Boals*.

The Court therefore concludes that if Doherty and Holmes were disciplined solely in retaliation for their support of and membership in MFFA based upon the association's protected activity, they state a valid first amendment claim, but not if they were disciplined based upon the association's unprotected activity. The Court discusses what activities motivated defendants in Part III.A.3 of this opinion.

### b. Weighing of Interests

Having found that some of plaintiffs' speech and association addressed matters of public concern, the Court must now weigh the "interests of the [employee], as a citizen, in commenting upon [those] matters of public concern and the interests of the [public] employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). Thus, "[i]n order to justify a restriction on speech of public concern by a public employee, plaintiff's speech must impair discipline by superiors, have a detrimental impact on close working relationships, undermine a legitimate goal or mission of the employer, impede the performance of the speaker's duties, or impair harmony among co-workers." *Meyers v. City of Cincinnati*, 934 F.2d 726, 730 (6th

16

Cir. 1991). Factors the Court should consider in weighing the interests include the manner, time, and place of the employee's constitutionally protected actions, and the context in which the dispute between the employee and employer arose. *Rankin v. McPherson*, 483 U.S. 378, 388 (1987).

A defendant bears the burden of demonstrating that it has an overriding state interest in efficient public service that would be undermined by a plaintiff's association and speech. *See Milliron v. Louisville & Jefferson County Metro. Sewer Dist.*, 867 F.Supp. 559, 563 (W.D. Ky. 1994). The primary claims defendants make that efficient public service was undermined are that various employees from the City of Maryville had to take time and attention away from their daily tasks to deal with complaint calls the City received. The City also claims that plaintiffs' speech and association caused harm to its good name because FireCo's sales calls were "rude and abrasive" and "misleading and confusing" and some callers were led to believe that the calls were being made on behalf of the City or the Fire Department. However, as discussed above, the unprofessional, misleading, and threatening aspects of FireCo's sales calls do not constitute speech and association on a matter of public concern. Thus, the Court need not engage in the balancing test in regard to such speech and association.

Defendants make no argument, however, that plaintiffs' speech and association that address matters of public concern hinder the efficient provision of public services. Instead, defendants argue that they did not retaliate in any way. At this stage in the analysis of a retaliation claim, the Court only determines if plaintiffs' interest in engaging in a protected

activity outweighs the government's interest in the efficient provision of public services. If so, then the Court will go on to determine whether plaintiffs suffered an adverse action and whether that the action was motivated by their protected activity. Thus, because defendants have not advanced a sufficient argument that the City has an overriding interest in efficient public service that would be undermined by plaintiffs' speech and association addressing matters of public concern, defendants have not met their burden.

Additionally, as discussed above, plaintiffs' speech and association on matters of public concern involved assisting families in the community whose homes were destroyed by fire, assisting fire fighters in their time of need, supporting association community programs including educating the public on fire safety, educating fire fighters about their rights, and supporting MFFA and its associational activities. Plaintiffs' interest in associating and speaking out on matters regarding fire safety and other areas of health and well-being is great. *See Chappel v. Montgomery County Fire Prot. Dist. No. 1*, 131 F.3d 564, 578 (6th Cir. 1997). Thus, the Court finds that the balancing test undertaken as part of the Court's summary judgment analysis weighs in favor of plaintiffs and that plaintiffs' speech and association regarding fire safety and other community services and programs is protected speech.

### 2.   Adverse Action

In order to bring a suit, a plaintiff must establish that he suffered some adverse action which would deter a person of ordinary firmness from continuing to engage in constitutionally protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 387, 394 (6th Cir. 1999).

18

"Th[is] standard is an attempt to balance the tension between two propositions: First, the injury suffered need not be great because there is no justification for harassing people for exercise of their constitutional rights; but second, a constitutional tort–like any tort–requires injury, and allowing constitutional redress for every minor harassment may serve to trivialize the First Amendment." *Mattox v. City of Forest Park*, 183 F.3d 515, 521 (6th Cir. 1999).

To constitute an adverse action, the alleged harm must be more than inconsequential or minor, but it need not be egregious. *See Zerman v. City of Strongsville*, No. 1:04-CV-2493, 2006 WL 2812173, at *24 (N.D. Ohio Sept. 28, 2006); *see also Thaddeus-X*, 175 F.3d at 398 ("[W]hile certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment.").

Examples of actions in the employment context that constitute an adverse action include discharge, demotions, refusal to hire, nonrenewal of a contract, failure to promote, and written reprimand. *Thaddeus-X*, 175 F.3d at 396; *Columbus Educ. Ass'n v. Columbus City Sch. Dist.*, 623 F.2d 1155, 1159 (6th Cir, 1980). A threat of termination constitutes an adverse action if, under the circumstances, it would have a chilling effect. *See Zerman*, 2006 WL 2812173, at *24.

Defendants argue that plaintiffs suffered no adverse action as a result of their speech and association. Defendants state that neither Doherty or Holmes lost their job, lost any money, experienced any type of shift change, was passed over for a promotion, or

experienced any emotional damage that necessitated any treatment by a doctor or psychologist. [Doc. 67 at 19.] On the other hand, the facts before the Court show that Hensley told Doherty and Holmes during a August 9, 2005 meeting that because they signed the First Services Agreement on behalf of MFFA, he was going to fire them if the complaint calls regarding FireCo's sales calls did not stop. Hensley Dep. 32, Apr. 9, 2008 [Doc. 44-29]; *see also* McClain Dep. 82; 84, Apr. 8, 2008; Doherty Decl. ¶ 35; Holmes Decl. ¶ 32. Hensley stated that he wanted to be clear on the issue so he reiterated, "I want you to understand if the complaints don't stop, I'm holding you responsible and I'm firing you." Hensley Dep. 32. Doherty and Holmes each stated that they were concerned about losing their jobs after the meeting. Doherty Decl. ¶ 48; Holmes Decl. ¶ 39. During a later meeting, McClain informed Doherty that he was still subject to termination because of continued complaint calls. Doherty Decl. ¶ 77. Finally, on September 22, 2006, the City of Maryville issued a written reprimand to Doherty. McClain Dep 50; 249; Doherty Decl. ¶ 89 & Ex. M; McClain Dep. 316. Though Doherty filed a response to the reprimand, the reprimand was not removed from his personnel file. Doherty Decl. ¶¶ 92-98; McClain Dep. 318.

For the purposes of summary judgment review, the Court finds that these threats of termination and the written reprimand placed in Doherty's file constitute adverse employment actions because they would deter a person of ordinary firmness from continuing to engage in constitutionally protected speech and association. Doherty and Holmes feared for their jobs, and as a result, stopped FireCo from engaging in fundraising calls on behalf of the association. Doherty Dep. 144; Doherty Decl. ¶¶ 48; 49; 68 & Ex. H; Holmes Decl.

20

¶¶ 36; 39.  Additionally, Doherty stated that members of the association were afraid to speak out on work-related issues and issues of interest to the public, such as fire safety, because of defendants' threats to Doherty.  Doherty Decl. ¶¶ 99-100.  Though these are subjective reports of how Doherty, Holmes, and association members reacted to defendants' actions, a person of ordinary firmness would likely behave the same way when faced with the threat of termination or a permanent, written reprimand in their personnel folder.  Thus, on the present facts, the Court determines defendants' threats to terminate Doherty and Holmes if the complaint calls did not stop and the written reprimand letter placed in Doherty's file constituted adverse actions.

### 3.  Motivation for Adverse Action

In order for there to be a constitutional violation, the adverse action must have been motivated by the exercise of a protected activity.  *Thaddeus-X*, 175 F.3d at 390.  This question is an issue of causation, which generally must be decided by the jury.  *See Zerman*, 2006 WL 2812173, at *13, 21 (citations omitted).  Therefore, for a party to prevail on summary judgment on this issue the Court must find that no reasonable jury could find in favor of the non-moving party.  *Id.* at *13.  The Court finds that, in this instance, the question turns on the credibility of each of the various individuals involved in adverse employment action and the meetings leading up to the same.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Thus, the Court finds

21

that summary judgment is inappropriate on this issue, and the decision as to the motivation behind the adverse employment action must be left to the jury.

## B. Plaintiffs' Other Argument

Plaintiffs argue that they are entitled to summary judgment because defendants violated MFFA's and its members' rights to engage in solicitation as a charitable organization. [*See* Doc. 45, Part II.c.]  However, as above, the Court again finds that this issue will also hinge on the defendants' motivation, which depends on a question of credibility that must be left to the jury.  Accordingly, summary judgment is not appropriate as to the plaintiffs' claims.

## C. Defendants' Other Arguments

The parties have agreed to dismiss the plaintiffs' claims as to defendant Gregory McClain [*see* Doc. 86], and thus the Court need not address defendants' arguments as to McClain.  With respect to the defendants' arguments that the City of Maryville cannot be held liable because defendants' actions were not based upon an official policy or custom, the Court finds that there are material questions of fact as to that issue, and thus summary judgment is not appropriate.  Finally, with respect to the defendants' argument that the defendants cannot be held liable for any alleged harm to the association members because they do not have standing, the Court addressed the issue of standing above.

IV.     **Conclusion**

For the reasons set forth herein, the Court finds that the plaintiffs' Fourth Claim in the complaint, in which plaintiffs allege a violation of Local 4053 International Association of Fire Fighter's free speech right, must be dismissed for lack of standing, but further finds that summary judgment is not appropriate as to the remaining issues. Accordingly, Plaintiffs' Motion for Partial Summary Judgment as to Defendants' Liability [Doc. 40] is hereby **DENIED** and Defendants' Motion for Summary Judgment [Doc. 41] is hereby **GRANTED in part** and **DENIED in part**. The remaining claims will proceed to trial.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

23