# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

|  |  |  |  |
|---|---|---|---|
| MICHAEL DOHERTY, ALAN HOLMES, | ) | | |
| and LOCAL 4053, INTERNATIONAL | ) | | |
| ASSOCIATION OF FIRE FIGHTERS, | ) | | |
|  | ) | | |
| Plaintiffs, | ) | | |
|  | ) | | |
| v. | ) | No.: | 3:07-cv-157 |
|  | ) | | (VARLAN/SHIRLEY) |
| CITY OF MARYVILLE, | ) | | |
|  | ) | | |
| Defendant. | ) | | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiffs' Petition for Award of Attorneys'
Fees and Expenses [Doc. 105]. Plaintiffs have requested a total of $390,812.99 in attorneys'
fees and costs. Defendant City of Maryville ("the City") has responded [Doc. 108] that
plaintiffs are entitled to a total award of attorneys' fees and costs not to exceed $83,804.88.
Plaintiffs have filed a reply [Doc. 112]. Thus, the matter is now ripe for determination. The
Court has carefully considered the pending motion, the parties' briefs and relevant exhibits,
and the applicable law. For the reasons set forth herein, Plaintiffs' Petition for Award of
Attorneys' Fees and Expenses [Doc. 105] will be **GRANTED IN PART** for a total
attorneys' fee award of $133,036.25 and **DENIED IN PART, WITHOUT PREJUDICE**
and with leave to refile in respect to plaintiffs' out-of-pocket litigation expenses and costs
pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1920.

## I.    Relevant Facts

Plaintiffs, Michael Doherty ("Mr. Doherty"), Alan Holmes ("Mr. Holmes"), and Local 4053, International Association of Firefighters ("MFFA") (hereinafter, referred to collectively as "plaintiffs") brought this action against defendants, the City of Maryville ("the City"), and Gregory McClain, the City Manager of the City of Maryville ("Defendant McClain"), both individually and in his official capacity.  Plaintiffs alleged that the City and Defendant McClain retaliated against them for exercising their rights to free speech and freedom of association in violation of the First Amendment.  Shortly before trial and by stipulation of all parties, Defendant McClain was dismissed with prejudice, leaving the City as the sole defendant.  After a four day trial, the jury returned a verdict in favor of each of the plaintiffs, awarding $15,000 in compensatory damages to Mr. Doherty, $7,500 in compensatory damages to Mr. Holmes, and $70,000 in compensatory damages to MFFA. Plaintiffs then moved for equitable relief which the Court granted in part and denied in part [Doc. 114].  In their petition, plaintiffs request attorneys' fees and costs pursuant to 42 U.S.C. § 1988, Federal Rule of Civil Procedure Rule 54, Local Rule 54.2, and the jury verdict.

## II.    Analysis

42 U.S.C. § 1988 provides, that in certain civil rights actions, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  *See* 42 U.S.C. § 1988(b); *Hensley v. Eckerhart*, 461 U.S. 424, 426 (1983).  When considering a petition for attorney fees, the court must first determine whether the petitioning party was the prevailing party.  *See Hensley*, 461 U.S. at

2

433. The next step for the court is to determine what fee is "reasonable." *See id*; *see also Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995). A starting point is to calculate the "lodestar" amount, which is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433; *see also Coulter v. Tennessee*, 805 F.2d 146, 148 n.1 (6th Cir. 1986); *Brooks v. Invista (Koch Indus.),* 528 F. Supp. 2d 785, 788 (E.D. Tenn. 2007). The resulting sum may need to be adjusted to reflect factors such as the "results obtained." *See Hensley*, 461 U.S. at 434 (quoting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)); *see, e.g., Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 621 (6th Cir. 2007).

### A.     Prevailing Party

Plaintiffs assert that they are prevailing parties for the purposes of 42 U.S.C. § 1988. Following the trial, the jury determined that the City retaliated against plaintiffs for plaintiffs' exercise of their constitutionally protected free speech and/or association rights. The jury awarded $15,000 in compensatory damages to Mr. Doherty, $7,500 in compensatory damages to Mr. Holmes, and $70,000 in compensatory damages to MFFA. Following the judgment, plaintiffs sought, and were granted in part, injunctive relief against the City [Doc. 114]. Specifically, the Court directed the City to expunge a written remand it issued to Mr. Doherty and all underlying allegations leading to that remand. Plaintiffs argue that these results, the jury verdict and the partial injunction, constituted success on "significant issues" in the litigation and benefitted plaintiffs. In opposition, the City argues that the Court should

3

consider the results obtained and plaintiffs' limited success in determining whether plaintiffs are prevailing parties under 42 U.S.C. § 1988.

Plaintiffs are prevailing parties for purposes of 42 U.S.C. § 1988 "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley*, 461 U.S. at 433 (citation and quotes omitted); *see also Owner-Operator Indep. Drivers Ass'n v. Bissell*, 210 F.3d 595, 597 (6th Cir. 2000). At trial, the jury found that the City violated plaintiffs' constitutional rights and awarded plaintiffs compensatory damages. Following trial, plaintiffs also attained partial injunctive relief. The Court finds that these results clearly determined significant issues in this litigation and conferred benefits on plaintiffs. Accordingly, the Court finds that plaintiffs are prevailing parties pursuant to 42 U.S.C. § 1988. As to the City's argument, the Court will reserve consideration of the "results obtained" until after the Court has calculated the reasonable fee or "lodestar" amount.[1] *See Hensley*, 461 U.S. at 434 (stating that factors such as the "results obtained" should be considered *after* the reasonable fee is calculated) (emphasis added).

### B. Reasonable Fee

After determining whether a plaintiff is a "prevailing party," the court must then determine what fee is "reasonable." *Hensley*, 461 U.S. at 433 (citation omitted); *see, e.g., Hadix*, 65 F.3d at 535. A reasonable fee is "one that is 'adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys.'" *Hadix*, 65 F.3d at 534 (quoting

---

[1]*See infra* Part C, Section 1.

4

*Blum v. Stenson*, 465 U.S. 886, 897 (1984). The fee applicant bears the burden of proving a reasonable fee, documenting the appropriate hours expended, and exercising appropriate "billing judgment." *Hensley*, 461 U.S. at 434, 436. The first step for the court in assessing the reasonable attorneys' fee is to calculate the "lodestar" by multiplying the number of hours reasonably expended on the litigation by the attorney's reasonable hourly rate *See Hensley*, 461 U.S. at 433; *Coulter*, 805 F.2d at 148 n.1. Finally, the court must determine the amount of the fee on the facts of each case. *Hensley*, 461 U.S. at 429; *see also Wimley v. Matheny*, No. 4:06-cv-72, 2008 WL 5130162, at *1 (E.D. Tenn. Dec. 3, 2008).

### 1. Reasonable Hours

Plaintiffs staffed this case with three partners, three associates, and one paralegal, all from the Washington, D.C. law firm of Woodley & McGillivary. Plaintiffs also obtained the assistance of one local counsel, a partner in the Kingsport, Tennessee law firm of Shine & Mason. Plaintiffs seek attorneys' fees for a total of 1,011.8 hours. Of this total, the City objects to 134.1[2] hours as redundant and unnecessary.

The City's specific objections to the requested hours are as follows:

1. The City objects to a total of 29.8 hours billed by partner Molly Elkin. The City objects to 16.7 hours for Ms. Elkin's preparation of the depositions of David Hodges and Gary Hensley. The City asserts that these depositions were

---

[2]The City objects to 135.1 hours billed by plaintiffs' counsel. However, the Court, in reviewing the City's calculations, determined that the City was actually only objecting to 134.1 hours [*See* Doc. 108, p. 15].

5

adequately conducted and reasonably billed by Ms. Mechak. The City also objects to 13.1 hours for activities related to the trial testimony of Alan Holmes. The City asserts that these activities were also adequately conducted and reasonably billed by Ms. Mechak. The City requests that all hours relating to these activities, a total of 29.8 hours, be stricken as redundant and unnecessary.

2.    The City also objects to a total of 51.4 hours billed by associate Megan Mechak. The City objects to 24.8 hours for the Rule 30(b)(6) deposition of Defendant McClain, a deposition the City asserts was adequately conducted and reasonably billed by Ms. Elkin. The City also objects to 26.6 hours for the preparation and trial examination of Mr. Doherty, an examination the City asserts was also adequately conducted and reasonably billed by Ms. Elkin. The City requests that all hours relating to these activities, a total of 51.4 hours, be stricken as redundant and unnecessary.

3.    Last, the City objects to a total of 52.9 hours billed by partner Douglas Steele. The City argues that Mr. Steele never appeared to handle any issue between the parties, that his billed hours were unreasonable, that Mr. Steele never dealt with the City's attorneys, that Mr. Steele made no contribution to this case, and that Mr. Steele did not perform any task that was not thoroughly handled by plaintiffs' other attorneys. The City requests that all hours billed by Mr. Steele, a total of 52.9 hours, be stricken as redundant and unnecessary.

6

[Doc. 108, pp. 10-15].

Plaintiffs replied to the City's objections, asserting that the time spent by Ms. Elkin, Ms. Mechak, and Mr. Steele in preparing for and attending the depositions and the trial, was not unreasonably duplicative or unnecessary. Accordingly, plaintiffs assert that each attorney made distinct contributions during the proceedings, and that all hours spent were reasonably expended in pursuing plaintiffs' case.

Hours which are "excessive, redundant, or otherwise unnecessary" are not reasonably expended. *Hensley*, 461 U.S. at 430. Accordingly, this Court will "exclude from this initial fee calculation hours that were not 'reasonably expended'." *Id*. at 434 (quoting S. Rep. No. 94-1011, p. 6 (1976)). The Supreme Court has explained:

> Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . . "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.'"

*Id*. (internal citations omitted) (emphasis in original); *Sykes v. Anderson*, No. 05-71199, 05-73725, 2008 WL 4776837, at *2-*3 (E.D. Mich. Oct. 31, 2008 ). The Sixth Circuit has also observed that while "multiple representation can be productive[,]" there is also "the danger of duplication, a waste of resources which is difficult to measure." *Coulter*, 805 F.2d at 152.

The Court has reviewed the hours spent by plaintiffs' counsel, the billing records, and the relevant arguments by both parties, and finds that 81.2 hours should be stricken as redundant and unnecessary from plaintiffs' total expended hours. To this end, the Court

7

excludes all time billed by Ms. Elkins in preparation for the depositions of David Hodges and Gary Hensley, and all activities pertaining to the trial testimony of Alan Holmes, a total of 29.8 hours. The Court finds the hours spent by Ms. Elkins in these matters to be redundant and unreasonable because these matters were adequately performed and reasonably billed by Ms. Mechak. Ms. Mechak was involved in this case from the beginning and the Court finds that her billing for these hours is a reasonable and adequate reflection of the work required. *See, e.g., E.E.O.C v. E.J. Sacco*, 102 F. Supp. 2d 413, 420-21 (E.D. Mich. 2000) (observing that "as a general matter, an opposing party should only be charged for the cost of the essential participating attorney" at a deposition).

The Court also excludes all time spent by Ms. Mechak on the deposition of Defendant McClain and her preparation for and the trial examination of Mr. Doherty, a total of 51.4 hours. The Court finds it redundant and unreasonable that Ms. Mechak billed for these hours which were adequately performed and reasonably billed by Ms. Elkin. Ms. Elkin, an experienced civil litigator, adequately and reasonably handled these matters and such activities should properly be billed to her and not Ms. Mechak [*See* Doc. 105, Exhibit 1, "Declaration of Molly A. Elkin"].

Finally, the Court finds the hours billed by Mr. Steele, a total of 52.9 hours, to be reasonable and non-excludable. The Court notes that Mr. Steele was admitted in this Court to appear pro hace vice [Doc. 78], and that the hours billed by Mr. Steele reflect a time when Ms. Elkin was not engaged in substantial billing activity in this case due to another pending trial [*See* Doc. 105, Exhibit A, "Services Performed by Molly Elkin," Exhibit C, "Services

8

Performed by Douglas Steele"].  Also, the Court's review of Mr. Steele's billing hours and the corresponding services does not indicate that excessive amounts of time were spent on certain tasks or that the tasks performed by Mr. Steele were not reasonably necessary to the litigation in this case [Doc. 105, Exhibit C, "Services Performed by Douglas Steele"]. Therefore, the Court finds that the 52.9 hours billed by Mr. Steele should be included in the lodestar calculation.  In sum, excluding 81.2 hours as redundant and unnecessary, this results in a grand total of 930.6 hours reasonably expended by plaintiffs in this litigation.

## 2. Reasonable Rate

The second half of the lodestar formula is the "reasonable hourly rate." *Hensley*, 461 U.S. at 433.  Plaintiffs have asked for hourly rates of $300 for partners Molly Elkin, Thomas Woodley, Douglas Steele, and local counsel D. Bruce Shine, and hourly rates of $225 for associates Heidi Burakiewicz, Lauren Schwartzreich, and Meghan Mechak.  Plaintiffs have also asked for an hourly rate of $100 for paralegal Keith Nickerson.  In support, plaintiffs have attached two declarations from attorneys claiming to be familiar with the billing hours of attorneys and paralegals in the jurisdiction of the Eastern District of Tennessee [*See* Doc. 105, Exhibit 2, "Declaration of D. Bruce Shine," Exhibit 4, "Declaration of James G. Stranch, III"].  The declarations of Mr. Shine and Mr. Stranch state that for this type of case, plaintiffs' requested rates are reasonable and consistent with the hourly rates charged by attorneys with similar qualifications and experiences in East Tennessee and the Knoxville area.

In response, the City argues that, in similar cases, a reasonable hourly rate for attorneys of comparable skill in the jurisdiction of the Eastern District of Tennessee is $200.00 per hour for partners and $175.00 per hour for associates.[3] In support, the City has attached two affidavits from attorneys claiming to be familiar with the billing hours of attorneys in this jurisdiction [Doc. 108, Exhibit 1, "Affidavit of Gary M. Prince," Exhibit 2, "Affidavit of Arthur F. Knight, III"]. The affidavits of Mr. Prince and Mr. Knight state that the rates given by the City are reasonable hourly rates for attorneys of comparable skill and experiences in similar cases in the jurisdiction comprising the Eastern District of Tennessee.

Hourly rates for fee awards should not exceed the market rates necessary to encourage competent lawyers to undertake the representation in question. *Coulter*, 805 F.2d at 149. These market rates are "different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region." *Id*. at 149. In order to determine whether plaintiffs' requested hourly rates are reasonable, a court must look to "the prevailing market rate in the relevant community." *Blum*, 465 U.S. at 895); *see, e.g., Hadix*, 65 F.3d at 536. Where, as here, a plaintiff's counsel has voluntarily agreed to represent a plaintiff in an out of town lawsuit, thereby necessitating litigation by that lawyer primarily in an alien locale, the court should deem the "relevant community" for fee purposes to constitute the legal community within that court's territorial jurisdiction. *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000). "[T]hus, the 'prevailing market rate' is that rate which

[3]The City has not objected to the hourly rate charged by paralegal Keith Nickerson.

lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record, rather than foreign counsel's typical charge for work performed within a geographical area wherein he maintains his office and/or normally practices." *Adcock-Ladd*, 227 F.3d at 350 (citations omitted). Moreover, a court has "'discretion to accept, reject, or modify [a plaintiff's] requested rates based on its experience and knowledge of the relevant marketplace.'" *Sykes*, 2008 WL 4776837, at *5 (citing *Roland v. Johnson*, No. 91-1460, 1992 WL 214441, at *3 (6th Cir. Sept. 4, 1992).

The Court has included the above considerations in its analysis, as well as the information about the reasonable hourly rates for attorneys in this jurisdiction and venue, as supplied by the declarations and affidavits provided by plaintiffs and the City. While the Court acknowledges that some courts within this jurisdiction and the surrounding region have awarded hourly rates similar to what is sought by plaintiffs, the Court also notes that neither party has produced a case from this venue and this district court of record—the United States District Court for the Eastern District of Tennessee at Knoxville—to support their request.[4] *See Adcock-Ladd*, 227 F.3d at 350 (stating that the court should deem the "'relevant community' for fee purposes to constitute the legal community within that court's territorial

---

[4]Plaintiffs' counsel has submitted several cases from around the Eastern District of Tennessee and the surrounding region, including cases from Nashville, Chattanooga, and Kentucky [*See* Doc. 105, Appendixes I-IV]. While the Court considered these cases and the hourly rates ordered by the courts, the Court notes that none of these cases pertain to the reasonable hourly rate for attorneys in this venue, as the relevant law demands. *See Adcock-Ladd*, 227 F.3d at 350. The Court also notes that the determination of a reasonable attorneys' fee is a fact-based inquiry and that a reasonable fee in a particular case is determined on a case-by-case basis. *Hensley*, 461 U.S. at 429. The relevant law and issues, the nature of the litigation, the performance of the attorneys, and the prevailing market rate are all individualized factors that must be considered.

jurisdiction; thus the 'prevailing market rate' is that rate which lawyers of comparable skill . . . can reasonably expect to command *within the venue of the court of record*") (emphasis added).

Both parties produced affidavits and declarations from attorneys claiming to be knowledgeable of the prevailing market rates in Knoxville and this jurisdiction. However, neither party provided a case or any other information expressing the prevailing market rates in this venue. Thus, as part of its analysis, the Court took into consideration the practice locations and experiences of the attorneys who submitted declarations and affidavits in this case. Mr. Shine and Mr. Stranch, who submitted declarations supporting plaintiffs, do not have firms in Knoxville but practice from firms located in, respectively, Kingsport, Tennessee and Nashville, Tennessee. On the other hand, the practices of Mr. Prince and Mr. Knight, who submitted affidavits supporting the City, are located in Knoxville, Tennessee, the venue of this Court. While the Court acknowledges that these different practice locations are not conclusive as to each attorneys' knowledge of the prevailing market rates in Knoxville, this did factor into the Court's consideration.

The Court also looked closely at the experiences and the qualifications of those of plaintiffs' counsel who devoted the most hours to this case, taking into consideration the relevant level of experience of the attorneys most active in this case. Without a doubt, Ms. Elkin and Ms. Mechak billed the majority of plaintiffs' hours. Ms. Elkin, who billed 209.4

hours,[5] is an experienced civil litigator, with fifteen (15) years experience as an attorney and as lead trial counsel in several civil rights and employment related cases. Ms. Mechak, who billed the most hours, at 476.1 hours,[6] has close to seven (7) years experience as an attorney. Finally, the Court considered its experience and knowledge of the relevant marketplace when determining the reasonable hourly rates. *See Sykes*, 2008 WL 4776837, at *5 (stating that a court has "'discretion to accept, reject, or modify . . . rates based on its experience and knowledge of the relevant marketplace'") (citing *Roland*, 1992 WL 214441, at *3)).

After taking the above factors into consideration, the Court finds that the City's requested hourly rates are closer to what a reasonably competent attorney would command in this venue. However, the Court finds that a rate of $200 per hour rate for partners, the rate proposed by the City, to be low in light of the risks faced by plaintiffs' attorneys in civil rights litigation. *See Ibarra v. Barrett*, No. 3:05-0971, 2008 WL 2414800, at *2 n.4 (M.D. Tenn. June 12, 2008) (noting that plaintiff's attorneys in civil rights cases may charge a higher rate then defense attorneys practicing in the same field). Accordingly, in this case, the Court finds that a $225 per hour rate for partners and a $175 per hour rate for associates are reasonable rates that comport with the market rates that are sufficient to encourage competent representation in Knoxville, the venue of this District Court.

---

[5]Re-calculated from 239.20 hours to account for redundant and unnecessary hours.

[6]Re-calculated from 528.50 hours to account for redundant and unnecessary hours.

## C.    Adjustments to the Lodestar

The calculation of the lodestar amount "does not end the inquiry." *Hensley*, 461 U.S. at 434. Instead, the court must next determine whether it is appropriate to adjust the fee upward or downward to reflect the twelve factors[7] enumerated by the Fifth Circuit in *Johnson. See Johnson*, 488 F.2d at 717-19; *see also Adcock-Ladd,* 227 F.3d at 349. Of these twelve factors, the "results obtained" is particularly crucial where a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief. *Hensley*, 461 U.S. at 434, 438 (stating that district courts must "consider the relationship between the extent of [a plaintiff's] success and the amount of the fee award"). The "results obtained" adjustment addresses two questions:

> First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

*Hensley*, 461 U.S. at 434; *see, e.g., Wayne v. Village of Sebring*, 36 F.3d 517, 531 (6th Cir. 1994). Thus, in this case, the "results obtained" factor is particularly relevant as plaintiffs did not prevail on all of their claims for relief.

---

[7] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 488 F.2d at 717-19.

### 1. The Results Obtained

As stated above, of the twelve *Johnson* factors, the Supreme Court and the Sixth Circuit have recognized that the "results obtained" is a highly important consideration in a court's determination of an attorneys' fee award. *See Hensley*, 461 U.S. at 434; *Adcock-Ladd*, 227 F.3d at 349. If a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. *Farrer v. Hobby*, 506 U.S. 103, 114 (1992); (quoting *Hensley*, 461 U.S. at 436). Moreover, "[t]his will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id.* at 436. There is no precise formula for making these determinations, and the court may eliminate specific hours, or it may simply reduce the award to account for the plaintiff's limited success. *Id.* The court has discretion in making this equitable judgment. *Id.*

In the Complaint, plaintiffs brought a total of five (5) claims, alleging that the City and Defendant McClain retaliated against them for exercising their rights to free speech and freedom of association in violation of the First Amendment [*See* Doc.1, ¶¶ 28-62]. These five (5) claims were against two defendants, the City, and Defendant McClain, named in his individual and official capacities. In plaintiffs' prayer for relief, plaintiffs sought punitive damages against Defendant McClain and preliminary and permanent injunctions against both defendants [*Id.*, pp. 18-19]. These claims and prayers for relief against both defendants were essentially the same and shared a common core of facts. Shortly before trial, Defendant McClain was dismissed by stipulation of the parties and therefore plaintiffs' claims against

15

Defendant McClain and plaintiffs' sole request for punitive damages against Defendant McClain did not proceed to trial.

While plaintiffs were ultimately successful, achieving roughly half of their requested relief and a partial injunction,[8] the final result obtained shows that plaintiffs' success was indeed limited. *See Hensley*, 461 F.3d at 436 (stating that when a plaintiff's success is limited, that result should be considered when determining the amount of attorneys' fees). The Court agrees with the City's argument that a reduction in the lodestar amount is necessary to account for plaintiffs' limited success; however, the Court disagrees with the extent of the reduction sought by the City. The Court may not reduce the attorneys' fee award based on a simple, mathematical ratio of successful claims to unsuccessful claims.[9]

---

[8]Following trial, plaintiffs moved for equitable relief [Doc. 104]. In the motion, plaintiffs requested: (1) an injunction restraining the City and its representative from preventing or otherwise interfering with the rights of MFFA to engage in fundraising activities; (2) an injunction restraining the City and its representatives from preventing or otherwise interfering with the rights of the MFFA to use the names "Maryville Fire Fighters Association" or "International Association of Fire Fighters Local 4053" during future fundraising efforts; (3) an injunction restraining the City and its representatives from issuing reprimands and making threats of discharge and otherwise taking any disciplinary action or engaging in retaliation against the MFFA, and its leaders and members, for engaging in fundraising activities; (4) an injunction ordering the City of Maryville, through the City Manager, to inform all Fire Department employees and all City Administrative Assistants that: (a) MFFA has the legal right to engage in fundraising activities; (b) MFFA exercised its legal right to engage in fundraising when it hired FireCo, LLC; and (c) MFFA's members and leaders will not experience retaliation or reprisals if MFFA engages in fundraising activities in the future; and (5) expungement of all City of Maryville, Maryville Fire Department, and personnel files regarding the written reprimand issued to Mr. Doherty on September 22, 2006, and all the underlying allegations which led to the written reprimand [Doc. 104, pp. 1-2].

The only injunctive relief granted by the Court was plaintiffs' fifth (5) request [Doc. 114]. Thus, the Court directed the City to expunge the written reprimand issued to Mr. Doherty and the underlying allegations, and denied all of plaintiffs' other requested injunctions [*Id.*].

[9]The City does not specify its request regarding the extent of the reduction to the lodestar. However, it seems to be at least a fifty percent (50%) reduction based on the City's request that the attorneys' fees in this case not exceed $83,804.88. [*See* Doc. 108, p. 23].

*See Hensley*, 461 U.S. at 435-36; *see also Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County*, 421 F.3d 417, 423 (6th Cir. 2005). In addition, the Court will not parse the attorneys' billing statements to identify specific hours that should be eliminated to account for the limited success because the facts, legal theories, and claims against the City and Defendant McClain were interrelated. Rather, the Court must focus on the significance of the overall relief to the hours reasonably expended on the litigation. *Hensley*, 461 U.S. at 435. "The result is what matters." *Id.*

Thus, the Court concludes that while plaintiffs were clearly prevailing parties under 42 U.S.C. § 1988, the results obtained in this case did not meet the breadth of the relief sought by plaintiffs and pursued up until the time of trial. *See, e.g., D.L.S., Inc. v. City of Chattanooga*, No. 97-6029, 149 F.3d 1182, 1998 WL 344046, at *4-*6 (6th Cir. Tenn. May 28, 1998) (approving a reduction in the lodestar that "seemed to it commensurate with the relief obtained"). While plaintiffs obtained part of their desired result, the end result was good, but not "excellent." *See Hensley*, 461 U.S. at 435.[10] In making this determination, the Court did not focus on the ratio of successful to unsuccessful claims, but considered the significance of the overall relief obtained by plaintiffs—a total of $92,500 in compensatory

---

[10]*Hensley* states that "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435. *Hensley* goes on to state that, "[i]f, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436.

damages apportioned between three plaintiffs and a partial injunction[11]—in relation to the hours plaintiffs reasonably expended on the litigation. *See DiLaura v. Township of Ann Arbor*, 471 F.3d 666, 672-73 (6th Cir. 2006).

Thus, considering both the significance of the overall relief and the 930.6 hours that were reasonably expended on the litigation, the Court determines that the lodestar amount should be reduced by twenty-five (25%) to account for plaintiffs' limited success. *See Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999) (affirming a reduced attorneys' fee award in an Establishment Clause case where the plaintiffs achieved limited injunctive relief); *Williamson County Bd. of Educ. v. C.K.*, No. 3:07-0826, 2009 WL 2066251, at *6 (M.D. Tenn. July 9, 2009) (imposing a 25% reduction in the lodestar to account for limited success in an Individuals with Disabilities Act case); *Doe v. Wilson County Sch. Sys.*, No. 3:06-0924, 2008 WL 4372959, at *11-13 (M.D. Tenn. Sept. 22, 2008) (reducing the lodestar fee amount by 30% to account for the plaintiffs' limited success in a First Amendment case where the plaintiffs did not achieve the breadth of the desired permanent injunction).

## 2. The *Johnson* Factors

The presumption is that the lodestar amount will result in an attorneys' fee award for a prevailing party that is reasonable under 42 U.S.C. § 1988. *Blum*, 465 U.S. at 897. However, in some cases of exceptional success, an enhanced award may be appropriate. *Hensley*, 461 U.S. at 435; *see also Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 621 (6th

---

[11]*See supra* note 8 (showing that plaintiffs were only granted one out of five of their requested injunctions against the City).

Cir. 2007); *see Barnes v. City of Cincinnati*, 401 F.3d 729, 746 (6th Cir. 2005) (approving an enhancement where the case was novel and controversial and area lawyers stated that few attorneys would have taken the case); *Geier v. Sundquist*, 372 F.3d 784, 792-96 (6th Cir. 2004) (stating that the case, which involved desegregation issues in higher education, was one of the "rare" and "exceptional" cases warranting an enhancement); *West v. Tyson Foods, Inc.*, No. 4:05-cv-183M, 2008 WL 5110954, at *3 (W.D. Ky. Dec. 3, 2008) (stating that a fee enhancement would be appropriate when counsel endures public criticism or where the case results in a "change in the jurisprudence of any of the issues litigated"). When a prevailing plaintiff seeks an enhancement of the attorneys' fee award, the plaintiff must bear the burden of proving that such an enhancement is necessary to obtain a reasonable fee. *Blum*, 465 U.S. at 898.

Here, plaintiffs argue that they are entitled to a fee enhancement of forty-five percent (45%) of the total reasonable fees calculated by the "lodestar" method. Plaintiffs assert that a number of factors enumerated by the Fifth Circuit in *Johnson* warrant this adjustment, discussing particularly the novelty and difficulty of the issues presented, the complexity of presenting this case to a jury, and the excellent result achieved. As stated previously, the City argues that the results obtained indicate that plaintiffs' success was limited and that their attorneys' fee request should be reduced accordingly. In addition, the City argues that this case was neither "pathbreaking" nor "of great social import" and argues that an analysis of the *Johnson* factors points to a conclusion that a fee enhancement would be inappropriate.

*See Geier*, 372 F.3d at 792-96 (approving an enhancement because the case was "pathbreaking and of great social import").

Plaintiffs' reliance on the *Johnston* factors as justification for the requested enhancement is misplaced. As the Supreme Court has noted, many of the *Johnson* factors are often subsumed in the lodestar calculation. *See Blum*, 465 U.S. at 898-900 (stating that the novelty of the issues, the complexity of the litigation, the quality of the representation, and the results obtained are reflected in a reasonable rate and do not usually justify an adjustment to the lodestar amount); *see also Ibarra*, 2008 WL 2414800, at *3. Thus, the fact that this case may have required the consideration of novel or difficult legal issues, a high level of skill, or additional time to formulate an effective trial strategy, does not require an automatic fee enhancement. *See id.* at *3. In addition, insofar as an attorneys' fee award is a way to compensate attorneys for time spent on a case, the lodestar amount clearly encompasses this consideration and incorporates the fact that this time was not spent engaged in other fee-paying matters. *See id.* Moreover, the function of 42 U.S.C. § 1988 is not to provide a windfall to attorneys but to encourage competent, reasonable attorneys to provide representation for plaintiffs in potentially undesirable civil rights lawsuits. *See id.* These considerations and others are already factored into the lodestar by its inclusion of the reasonable market rate for a competent attorney in the relevant community.

The key question in an attorneys' fee analysis pursuant to 42 U.S.C. § 1988 is whether the lodestar calculation represents a reasonable fee, such that an enhancement would be necessary to provide "fair and reasonable compensation." *Blum*, 465 U.S. at 901; *see also*

20

*Barnes*, 401 F.3d at 745.  Here, plaintiffs have not produced evidence that this case was "rare" or "exceptional" and warranting an enhancement of the lodestar amount.  Moreover, plaintiffs' counsel has not proven that this case was especially controversial or novel, or that it resulted in a change in the jurisprudence of any of the issues litigated.  *See, e.g., West*, 2008 WL 5110954, at *3 (declining to enhance the lodestar fee because counsel for plaintiffs did not prove that the case was "rare" or "exceptional"); *Ibarra*, 2008 WL 2414800, at *4 (holding that the results obtained mitigated against any finding that the degree of success was so exceptional so as to warrant an upward adjustment).

Plaintiffs' counsel has also failed to show that the application of the remaining *Johnson* factors supports an enhancement of the lodestar amount.  Given that "there is no automatic requisite of a multiplier just because many of the factors that may be considered are satisfied," plaintiffs' arguments and proof as to the remaining *Johnson* factors do not warrant an enhancement.  *Bank One, N.A. v. Echo Acceptance Corp.*, 595 F. Supp. 2d 798 (S.D. Ohio. 2009).  The lodestar amount, adjusted to account for plaintiffs' limited success, is reasonable compensation for the work done in this case.  While plaintiffs prevailed at trial, recovered compensatory damages, and obtained partial injunctive relief following trial, this Court is unconvinced that the degree of success was so much as to warrant an upward enhancement.  Further, the end result, that plaintiffs only proceeded to trial against one of the defendants originally sued, that plaintiffs were not awarded any of their requested relief against Defendant McClain, and that plaintiffs did not obtain the full amount of injunctive

relief sought, mitigates plaintiffs' argument that they obtained "excellent" results entitling them to a fee enhancement.

### D.    Costs

An itemized statement of costs is attached to plaintiffs' petition for attorneys' fees. Plaintiffs are seeking reimbursement for a total of $25,985.74 as actual out-of-pocket costs and expenses. The City has not addressed plaintiffs' request for reimbursement of costs. However, the amount stated by the City in its request regarding the total attorneys' fee award does not appear to include costs.

There are two separate sources of authority for an award of out-of-pocket litigation expenses. *See Northcross v. Bd. of Ed. of Memphis City Schs.*, 611 F.2d 624, 639 (6th Cir. 1979 (citations omitted). One source is 42 U.S.C. § 1988. *Northcross*, 611 F.2d at 639. Expenses authorized pursuant to § 1988 include "incidental and necessary expenses incurred in furnishing effective and competent representation." *Id.* Such expenses include reasonable photocopying, paralegal expenses, and travel and telephone costs. *Cleveland Area Bd. of Realtors v. City of Euclid*, 965 F. Supp. 1017, 1023 (N.D. Ohio 1997).

Other litigation costs are provided for under a different source of authority, that of 28 U.S.C. § 1920. *Northcross*, 611 F.2d at 639. These include, "docket fees, investigation expenses, deposition expenses, witness expenses, and the costs of charts and maps." *Cleveland*, 965 F. Supp. at 1023 (citing *Northcross*, 611 F.2d at 639 (citations omitted)). Costs pursuant to § 1920 encompass those awarded under Federal Rule of Civil Procedure

54(d) which provides for an award of costs, other than attorneys' fees, to prevailing parties.

Fed. R. Civ. Pro. 54(d).

While Rule 54(d) creates a presumption in favor of an award of costs, a court's discretion to award costs is also limited by the statutory definition of costs in 28 U.S.C. § 1920. *See Crawford v. Fitting Co. v. J.T. Gibbons*, 482 U.S. 437, 441-42 (1987). Pursuant to 28 U.S.C. § 1920, the following costs may be recovered:

> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation for court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Plaintiffs have not provided sufficient legal justification for an award of expenses allowable under 42 U.S.C. § 1988 and have not provided sufficient documentation for an award of costs allowable under 28 U.S.C. § 1920. An itemized spreadsheet of expenses and costs, such as that supplied by plaintiffs, without any supporting documentation or legal justifications, is insufficient for the Court to issue a judgment as to whether these costs are allowable under either 42 U.S.C. § 1988, 28 U.S.C. § 1920, or both.

Moreover, plaintiffs have not complied with Local Rule 54.1 which requires that a Bill of Costs with supporting documentation be submitted to the Clerk of Court within thirty (30) days from the entry of judgment. *See* E.D. TN LR 54.1. The Local Rule sets out specific

procedures that the claiming attorneys must follow, and the Rule also sets out a specific procedure the opposing attorneys must follow to object to any requested reimbursement by the prevailing party. *Id.* Only after the Clerk of Court has made a final determination of allowable costs pursuant to the Local Rule does the Court, on motion, review any objections to the Clerk's final determination. *Id.*

The Court expects litigants to be familiar with this District's Local Rules and to follow them in all cases. While it is within the Court's discretion to deny costs based on failure to comply with Local Rule 54.1, it is also within the Court's discretion to consider a request for costs and expenses that does not comply precisely with the Local Rule. *See King v. Gowdy*, 268 Fed. Appx. 389, 391-92 (6th Cir. 2008) (remanding to the district court to consider an attorney's motion for costs and expenses made under 42 U.S.C. § 1988 and to separate costs allowable under 28 U.S.C. § 1920 from those recoverable under 42 U.S.C. § 1988); *Deal v. Hamilton County Dept. of Educ.*, No. 1:01-cv-295, 2006 WL 2854463, at *22-23 (E.D. Tenn. Aug. 1, 2006) (directing the plaintiffs to file an appropriate bill of costs with the clerk).

Accordingly, plaintiffs will be given thirty (30) days from entry of this Memorandum and Order to file new motions, supported by proper documentation and legal argument, seeking reimbursement of the expenses and costs allowable under 42 U.S.C. § 1988 and 28 U.S.C. § 1920. Plaintiffs will not be permitted to seek any additional attorneys' fees incurred in preparing such motions. The Court recognizes the City may object to incurring any additional attorneys' fees in response to such motions, and the City may either file a response

if desired or leave the matter in the Court's hands. There will be no reply. The current request for cost reimbursement will be denied, but without prejudice.

**E.      Post Judgment Interest**

Plaintiffs also seek post-judgment interest on the attorneys' fees award dating from February 12, 2009, the date of the jury verdict. The City has not specifically opposed this request. Thus, the Court will award plaintiffs post-judgment interest on the attorneys' fee award, running from the date of judgment, February 12, 2009. *See Associated Gen'l Contractors of Ohio, Inc. v. Drabik*, 250 F.3d 482, 495 (6th Cir. 2001) (holding that attorneys' fees will bear interest from the date of judgment, even if the fees were not quantified until a later date). *But see*, *Pennington v. Western Atlas, Inc.*, 55 Fed. Appx. 252, 254 (6th Cir. 2003) (stating that interest will not be awarded on an award of attorneys' fees from the date of judgment because the underlying original judgment did not specifically provide for an award of attorneys' fees).

**III.      Conclusion**

The Court finds that plaintiffs are the prevailing parties and, as such, they are entitled to reasonable attorneys' fees pursuant to 42 U.S.C. § 1988. The Court will reduce plaintiffs' claimed hours by 81.2 because the Court has found these hours to be redundant and unnecessary. This results in a recalculated total of 930.6 hours reasonably expended. The Court finds that, for this litigation, $225 per hour is a reasonable rate for partners and $175 per hour is a reasonable rate for associates in this venue of the Eastern District of Tennessee. Multiplying 930.6 approved hours by an hourly rate of $225 for partners and a hourly rate

25

of $175 for associates, the Court finds that the lodestar amount is $177,395.00. That lodestar amount is then reduced by twenty-five percent (25%) to calculate for plaintiffs' limited success. Thus, plaintiffs' petition for attorneys' fee is **GRANTED IN PART** for a total of $133,046.25 pursuant to 42 U.S.C. § 1988, post-judgment interest to run from the date of judgment.

Plaintiffs failed to comply with Local Rule 54.1 in seeking costs under 28 U.S.C. § 1920 and they also did not justify or separate litigation expenses and costs allowable under 42 U.S.C. § 1988. Thus, plaintiffs' current request for expense and cost reimbursement will be **DENIED, WITHOUT PREJUDICE**, and with leave to refile. The Court will exercise its discretion to permit plaintiffs to file motions seeking reimbursements under 42 U.S.C. § 1988 and 28 U.S.C. § 1920, and the City will be given an opportunity to file a response. There will be no reply.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE